UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

PATRICIA LEAHY,

        Plaintiff,                          **MEMORANDUM & ORDER**

   - against-                               Civil Action No. 07-2008

GAP, INC., OLD NAVY, INC., KARMA
KARGL, in her official and individual capacity,
DANA GLICKMAN, in her official and
individual capacity, VALERIE CAPALA, in her
official and individual capacity, and JESSICA
FLASHNER, in her official and individual
capacity,

        Defendants.
-------------------------------------------------------------X

**APPEARANCES:**

**Ruffo, Tabora, Mainello & McKay, P.C.**
Attorneys for Plaintiff
3000 Marcus Avenue, Suite 1W10
Lake Success, New York 11042
By: John F. McKay, III, Esq.

**Littler Mendelson**
Attorneys for Defendants
One Newark Center, 8th Floor
Newark, New Jersey 07192
By: Stacey D. Adams, Esq.
    Margo Eberlein, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Patricia Leahy ("Leahy" or "Plaintiff") commenced this action asserting seven

causes of action arising out of the termination of her employment with Defendant Old Navy LLC

s/h/a/ Old Navy Inc. Presently before the Court is a motion to dismiss. In that motion, all

defendants seek dismissal of the third through seventh causes of action and defendants Karma Kargl ("Kargl"), Dana Glickman ("Glickman"), Valerie Capala ("Capala"), and Jessica Flashner ("Flashner") (collectively the "Individual Defendants") seek dismissal of the first and fifth causes of action. For the reasons set forth below, the motion is granted in part and denied in part.

**Background**

The following facts are taken from the Complaint.

Leahy was hired by Defendants Gap Inc. ("Gap") and/or Old Navy, Inc. (Old Navy") in June 1997 and was assigned to the Old Navy store in Islandia, New York. As of August 2004, Leahy was working as a stock supervisor in the Old Navy in Levittown, New York. At that time, she advised her supervisors that she was pregnant with her second child. Shortly thereafter, Leahy began experiencing inappropriate and derogatory remarks regarding her work and the management of her work hours.

In or about October or November 2004, Leahy was asked to and voluntarily participated in "overnight" work hours. After two weeks of working overnights, Plaintiff realized that the time change was not suitable to her family life and the workload entailed an increase in the physical nature of the job. Although "she had no problem fulfilling the physical nature of the job," Leahy requested a return to a daytime supervisor position "because the more physically demanding work was medically unwise during the latter stages of her pregnancy." Her request was granted but the Individual Defendants began to harass her to step down from her position as stock supervisor.

2

In December 2004, Leahy submitted an "accommodation letter" to Old Navy from her doctor indicating that she could perform all her duties as supervisor for the remaining month and a half prior to her maternity leave with exception of heavy lifting, climbing ladders and other strenuous movements. Thereafter, Plaintiff was harassed by Kargl and Capala to withdraw the letter and, when she refused, they continued to harass her.

On January 6, 2005 Leahy was terminated. She claims that the reasons given for the termination – her manipulation of her time card and her lateness – was a pretext and the real reason was her employer's attempt to avoid the inconvenience of accommodating her in the last months of her employment and her future maternity leave, during which she was entitled to certain maternity benefits and compensation.

Based on the foregoing, Leahy asserts the following claims: violation of Title VII (first count); violation of the New York State Executive Law (second count); conspiracy in violation of 42 U.S.C. § 1985(3) (third count); discrimination in violation of the Employee Retirement Income Security Act ("ERISA") (fourth count); violation of the American with Disabilities Act ("ADA") (fifth count); violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution (sixth count); and violation of the equal protection guarantee of the New York State Constitution (seventh count).

**Discussion**

I. **Legal Standard for a Motion to Dismiss**

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court

recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6). In *Bell Atl. Corp. v. Twombly*, – U.S.–, 127 S. Ct. 1955 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1274.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 1964-65 (citations and internal quotation marks omitted).

The Second Circuit has stated that *Twombly* does not require a universally heightened standard of fact pleading, but "instead requir[es] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). In other words, *Twombly* "'require[s] enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1974)).[1] *See also Goldstein v. Pataki*, 516 F.3d

---

[1] Although *Twombly* did not make clear whether the plausibility standard applies beyond the antitrust context, the Second Circuit has "declined to read *Twombly's* flexible 'plausibility

4

50, 57 (2d Cir. 2008). As always, the Court must "accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor." *ATSI Commcn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

## II. Counts One and Five as Against the Individual Defendants

The Individual Defendants have moved to dismiss the claims under Title VII and the ADA as against them on the grounds that agents of an employer are not subject to individual liability under Title VII and the ADA, *see, e.g., Mormol v. Costco Wholesale Corp.,* 364 F.3d 54, 59 (2d Cir. 2004) ( Title VII); *Cameron v. Cmty. Aid for Retarded Children,* 335 F.3d 60, 61 n.1 (2d Cir. 2003) (ADA). In response, Plaintiff has advised the Court that she is withdrawing her claims under Title VII and the ADA as against the Individual Defendants. Accordingly, the first and fifth counts of the complaint are dismissed as against the Individual Defendants.

## III. The Claim Pursuant to 42 U.S.C. § 1985(3) As Against All Defendants

In her third cause of action, Leahy alleges that the Defendants conspired to deprive her of her civil rights in violation of 42 U.S.C. § 1985(3). Defendants have moved to dismiss arguing that (1) Leahy cannot establish a violation of her Constitutional Rights; (2) the allegations of conspiracy are vague and conclusory; and (3) a conspiracy cannot exist between corporate actors acting within the scope of their employment.

Section 1985(3) creates no substantive rights itself but rather provides a remedy for the deprivation of rights guaranteed by the Constitution. *United Bhd. of Carpenters and Joiners v. Scott*, 463 U.S. 825, 833 (1983). To reach a private conspiracy, "[a] § 1985(3) claim requires

---

standard' as relating only to antitrust cases." *ATSI Commcn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n.2 (2d Cir. 2007).

proof that the co-conspirators intended to deprive the victim of a right guaranteed by the Constitution against private impairment." *Spencer v. Casavilla*, 44 F.3d 74, 77 (2d Cir. 1994). The only Federal Constitutional provision referred to in the complaint is the Equal Protection Clause of the Fourteenth Amendment, which is the basis for the sixth cause of action.[2] Fourteenth Amendment claims, however, can only be maintained against state actors or against private actors whose conduct can be fairly attributable to the state. *See N.Y.S. Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1358 (2d Cir. 1989); *Lown v. Salvation Army, Inc.,* 393 F. Supp. 2d 223, 244 (S.D.N.Y. 2005). Neither state action nor individual conduct attributable to the state is alleged in the complaint. The motion to dismiss the third cause of action is granted.[3]

---

[2] The complaint is vague as to the specific constitutional violation underlying Leahy's § 1985(3) claim. Rather, it nebulously asserts that the defendants conspired to deprive her of her "civil rights." Reading the complaint liberally, it seems to this Court that the claim is premised on the Equal Protection Clause. To the extent Leahy is asserting § 1985(3) to redress violations of Title VII, her claim must be dismissed pursuant to *Great Am. Fed. S. & L. Ass'n v. Novotny,* 442 U.S. 366, 378 (1979). In *Novotny*, the Supreme Court held that § 1985(3) could not be invoked to redress Title VII violations because "if a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of the detailed and specific provisions of Title VII." *Id.* at 367. Also, to the extent the § 1985(3) claim is premised on the New York State Human Rights Law, the claim must fail as that statute has its own mechanism for the enforcement and conciliation of claims. *See Caraveo v. Nielsen Media Research, Inc.,* 2003 WL 169767, *4 (S.D.N.Y. Jan. 22, 2003), *Report and Recommendation adopted in part and rejected (on other grounds) in part,* 2003 WL 1745064 (S.D.N.Y. Mar. 31, 2003); *cf. Sherlock v. Montefiore Med. Ctr*, 84 F.3d 522, 527 (2d Cir. 1996). *But see Garrett v. Mazza*, 2001 WL 123862 (S.D.N.Y. Feb. 13, 2001).

[3] Section 1985(3) claims must allege a conspiracy, *see, e.g., CINE SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007), and claims of conspiracy are subject to a heightened pleading requirement. A plaintiff alleging conspiracy "must allege, with at least some particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." *Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999). "[P]laintiffs must do more than make vague, general or conclusory accusations in order to establish the existence of a conspiracy actionable under § 1985(3)." *Burke v. Town of East Hampton*, 2001 WL 624821 (E.D.N.Y. 2001) (quoting *Mass v. McClenahan,* 893 F. Supp. 225, 231 (S.D.N.Y. 1995); *accord Greene v. Wright*, 389 F. Supp.2d 416, 426 (D. Conn. 2005).

## IV. The ERISA Claim

The complaint alleges as a fourth cause of action that Leahy's termination violated her rights under ERISA. [Compl. ¶ 54-55]. Section 510 of ERISA provides that "[i]t shall be unlawful for any person to discharge . . . a participant or beneficiary [of an employee benefit plan] . . . for the purpose of interfering with the attainment of any right to which such participant may be entitled to under the plan. . . ." 29 U.S.C. §1140.

Focusing on the allegation that "gender and/or pregnancy was used as the basis for the adverse employment decisions affecting [Leahy's] pension and related benefits" Defendants contend that this cause of action must be dismissed because no ERISA cause of action lies where the loss of pension benefits was a mere consequence of a termination; rather Leahy is required to demonstrate that her employer was motivated by the specific intent to interfere with her ERISA-protected benefits. Defendants cite *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997); *Dister v. Continental Group, Inc.* 859 F.2d 1108, 111 (2d Cir. 1998); and *O'Reilly v. Consol. Edison Co. of New York, Inc.*, 374 F. Supp.2d 278, 289-90 (E.D.N.Y. 2005), *aff'd,* 173 F. App'x 20 (2d Cir. 2006). Plaintiff responds that the allegations of the complaint are sufficient to plead that one of the reasons the Plaintiff was terminated was to prevent the vesting or enjoyment of benefit rights which she would have been entitled to if she kept working for Defendants and that is all she is required to do.

While the complaint is not a model of clarity, it is sufficient to withstand a motion to

---

Plaintiff's complaint lacks the required detail to state a claim for conspiracy. Also, the allegations of conspiracy contained in the complaint are barred by the intracorporate conspiracy doctrine to the extent that the Individual Defendants were acting within the scope of their employment. *See, e.g., Nassau County Employee "L" v. County of Nassau*, 345 F. Supp. 2d 293, 304-05 (E.D.N.Y. 2004).

dismiss. At this stage Leahy need only allege, not demonstrate, that in terminating her employment Defendants were motivated by the intent to interfere with her benefits. She has satisfied that pleading requirement by alleging that in terminating her employment, her "employer was attempting to avoid . . . her future maternity leave which would have begun in February of 2005. The Plaintiff had been an employee of Old Navy and/or Gap for over seven (7) years and was entitled to certain maternity benefits and compensation which was denied to her by Defendants . . . ." Compl. ¶ 38. The motion to dismiss the ERISA claim is denied.

## V. The ADA Claim

In her fifth cause of action Leahy asserts that Defendants "failed to reasonably accommodate the Plaintiff to provide her with a position and/or duties that did not endanger her health during Plaintiff's pregnancy" in violation of the ADA. Compl. at ¶ 59.

The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Employers of persons with disabilities are required to make reasonable accommodations for otherwise qualified individuals with disabilities and are prohibited from retaliating against an employee engaged in activities protected under the statute. *See id* §§ 12112(b)(5)(a), 112203(b).

An essential element of a claim for failure to accommodate is that the plaintiff be an individual with a "disability" within the meaning of the statute. *See Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001); *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999); *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869-70 (2d Cir. 1998). A person

is "disabled" under the ADA when that person (1) has a physical or mental impairment that substantially limits one or more of the major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102. "In determining whether a limitation is 'substantial,' courts consider the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long term impact of or the expected long term impact of or resulting from the impairment. . . . For purposes of the ADA, short term, temporary restrictions are not 'substantially limiting" and do not render a person 'disabled.'" *Conley v. United Parcel Service*, 88 F. Supp. 2d 16, 19 (E.D.N.Y. 2000) (citations omitted). As one court has recently noted:

> To establish a disability under the ADA, there must be some proof of permanency. *See Adams v. Citizens Advise Bureau,* 187 F.3d 315, 316-17 (2d Cir. 1999). In other words, the limitation on the claimed major life activity cannot be temporary. *Id.* (temporary neck, back, and knee injury lasting three and a half months not a disability); *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 646 (2d Cir. 1998) (temporary impairment of seven months not substantially limiting); *McNamara v. Tourneau, Inc.*, 496 F. Supp. 2d 366, 376 (S.D.N.Y. 2007) (injury lasting only eight weeks not a qualifying disability); *Williams v. Salvation Army*, 108 F. Supp. 2d 303, 312-13 (S.D.N.Y. 2000) (temporary, non-chronic impairments of short duration, with little or no long-term or permanent impact, are usually not disabilities.").

*Green v. New York City Health and Hospital Corp.*, 2008 WL 144828 at * 4 (S.D.N.Y. Jan. 15, 2008).

"Every court to consider the question of whether pregnancy in and of itself is a 'disability' within the meaning of the ADA has concluded that it is not." *Id.* at *5 (quoting *Minott v. Port Auth. of N.Y. & N.J.*, 116 F. Supp. 2d 513, 525 (S.D.N.Y. 2000) (collecting cases)). "[O]nly in extremely rare cases" do conditions arising out of pregnancy qualify as a

9

disability under the ADA and it is the resulting physiological impairment that renders the person disabled. *Conley*, 88 F. Supp. 2d at 19-20.

In an attempt to avoid the precept that pregnancy is not a disability, Plaintiff maintains on the instant motion that her disability was not her pregnancy but rather her inability to "perform heavy lifting, climbing ladders and other strenuous movements." The only plausible reading of the allegations in the complaint, however, is that these claimed limitations were the result of her pregnancy and therefore as temporary as the pregnancy itself. *See Conley*, 88 F. Supp. 2d at 19; 29 C.F.R. app. § 1630.2(j) ("temporary non-chronic impairments of short duration with little or no long term or permanent impact, are usually not disabilities"). If, in fact, the inability to perform the aforementioned tasks was of a more permanent nature, untethered to Leahy's pregnancy, she may amend her complaint accordingly. The motion to dismiss the ADA claim is granted.

## VI. The Federal Equal Protection Claim

Leahy's sixth cause of action alleges that all Defendants violated her rights under the Equal Protection Clause of the Fourteenth Amendment. As stated earlier, the Fourteenth Amendment protects only against governmental interference and therefore requires state action. *See N.Y.S. Nat'l Org. for Women*, 886 F.2d at 1358; *Lown,* 393 F. Supp. 2d at 244. No state action is alleged and therefore the sixth cause of action must be dismissed.

## VII. The State Constitutional Claim

In the seventh cause of action, it is alleged that the Defendants failed to provide Leahy with equal protection under the laws guaranteed to all citizen of New York State by its Constitution when the Defendants failed to provide reasonable accommodations for her during

10

her pregnancy and illegally terminated her employment. Equal protection claims under the New York State Constitution are analyzed similarly to Federal Equal Protection Clause claims and require that the plaintiff allege state action. *See Gillingham v. Geico Direct*, 2008 WL 189671 at * 7 (E.D.N.Y. 2008); *Lown,* 393 F. Supp. 2d at 244 (citing *People v. Kern*, 75 N.Y.2d 638, 555 N.Y.S.2d 647 (1990) (holding state equal protection clause is directed at discrimination attributable to the government and requires a showing of state action)). The absence of state action mandates dismissal of Leahy's state equal protection claim.

Leahy's assertion, contained not in the complaint but in her opposition to the instant motion, that the New York State constitutional cause of action is based on the civil rights provision and not the equal protection clause does not save her seventh cause of action. The civil rights clause contained in section 11 of the New York Constitution provides that "[n]o person shall, because of race, color, creed or religion, be subjected to any discrimination in his or her civil rights by any other person, or by any firm, corporation, institution, or the state or any agency or subdivision of the state." N.Y. Const. Art. I, § 11. The civil rights clause does not require state action. *See Kern*, 75 N.Y.2d at 651. It does, however, require that the discrimination be due to "race, color, creed, or religion." *See* N.Y. Const. Art. I, § 11. The civil rights clause does not cover the discrimination alleged here.[4]

The motion to dismiss the seventh cause is granted.

**Conclusion**

For the reasons set forth above, the motion to dismiss is granted to the extent that the first

---

[4] Claims of employment discrimination due to disability and sex, among others, are covered under the New York State Human Rights Law. *See* N.Y. Exec. Law § 296. Indeed, Leahy's second cause of action alleges Defendants violated that statute.

causes of action is dismissed as against Defendants Kargl, Glickman, Capala and Flashner, and the third, fifth, sixth and seventh causes of action are dismissed as against all Defendants. The motion to dismiss is denied as to the fourth cause of action.

**SO ORDERED.**

Dated: Central Islip, New York
July 29, 2008

/s/
Denis R. Hurley
Senior District Judge